(156 App. Div. 375.)

SIDWAY v. SIDWAY et al.

(Supreme Court, Appellate Division, Second Department. April 30, 1913.)

1. DIVORCE (§ 275*)—DECREE—ALIMONY—LIEN.

An interlocutory decree of divorce, fixing permanent alimony, awarded a wife, does not prevent the husband from executing a mortgage on his property to secure a bona fide creditor, or conveying his property; no alimony being due at the time.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 750, 751; Dec. Dig. § 275.*]

2. DIVORCE (§ 269*)—CONTEMPT—VIOLATION OF DIVORCE DECREE.

Where a husband, against whom an interlocutory decree of divorce, fixing permanent alimony, had been rendered, gave a mortgage on his individual interest in real estate to secure his mother for a valid debt, and conveyed his equity to his cotenants, brothers and sisters, for a valuable consideration, and then left the state and did not pay alimony,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a brother, a lawyer, who advised the giving of the mortgage and the purchase by the cotenants, was not guilty of contempt of court, in the absence of any evidence that he advised the husband to leave the state and refuse to pay alimony.

[Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 756–763; Dec. Dig. § 269.*]

Appeal from Special Term, Kings County.

Action by Mary S. Sidway against Harold S. Sidway. From an order, as resettled by an order, plaintiff and Frank S. Sidway appeal. Reversed.

See, also, 141 N. Y. Supp. 14.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and RICH, JJ.

Warren Bigelow, of New York City, for appellant Mary S. Sidway.

Adelbert Moot, of Buffalo (Helen Z. M. Rodgers, of Buffalo, on the brief), for appellant Frank S. Sidway.

THOMAS, J. In this action for divorce, a counsel fee of $500 and temporary alimony at $200 per month were awarded on May 12, 1912, and duly paid. On May 10th the defendant executed a mortgage on his individual one-fifth interest in land in Buffalo to secure his mother for a valid indebtedness of $9,120, and on June 20th the defendant conveyed his equity to his brothers and sisters, cotenants, for the sum of $4,880 then paid, which was its full value. His brother, Frank S. Sidway, a lawyer residing at Buffalo, participated in this conveyance as grantee, and as an adviser, and accordingly has been found guilty of a civil contempt and fined the sum of $900. Hence he appeals; whereas the plaintiff appeals, in that the fine was not at a greater sum, which it is now urged should be some $15,000, by reason, not only of the conveyance, but also of the mortgage to the mother, who was advised thereto by appellant.

In what way did the brother injure the plaintiff, whereby the former came into contempt of court? It is said to be as follows: The action was tried on June 12th, and the permanent alimony fixed at $350 per month, and the judgment was on June 18th duly served on the defendant, and after conveying the land as stated, and receiving payment therefor, he left the state and did not pay the alimony, although he appealed from the interlocutory judgment, so far as it involved it. It is now charged that the brother advised the departure, the omission to pay the alimony, that he procured the conveyance of the land to put it beyond the reach of the judgment, and that he in that way furnished the money that enabled the defendant to take himself beyond the jurisdiction of the court.

[1] The contention cannot be that an interlocutory decree of divorce, fixing permanent alimony, although not a lien on the land, is so potential that a bona fide creditor may not be secured, if she be a mother, and the land may not be sold for its full value for cash, if the grantees be four brothers and sisters, cotenants, and this even if no alimony be due and payable. By such proposition, pending the

continuance of the decree, the land never escapes from the bondage, the mother creditor is incapacitated to secure her debt, and the cotenants cannot become alienees. The judgment continues its periodical demand for the payment of alimony during the mutual life of the parties, and it cannot be that a mother or brother meanwhile must abstain from any act that would disturb the property in its statu quo.

[2] It is urged that the vice of the grant is that it was not honest in purpose, but that it was contrived to enable the land to be converted into personalty, to enable the defendant to carry it beyond the reach of the court, and that the brother advised that he should so do. There is not only no evidence that the brother advised the absence of the defendant from the state, but the positive statements of the brother and the defendant are that the brother counseled that defendant stay in the state and pay the alimony pending the appeal. The brother, as did the mother, lived in Buffalo, and did not often see the defendant, who lived in the city of New York, and the former disclaims all knowledge that the defendant intended to leave the state, or that he had knowledge of his going. But it is shown that the brother attended the trial and hearings in this court, and that he was counsel in the case. That a brother was interested for a brother is not an offense, nor does it show that he was his legal representative in the action, as he clearly was not. The controversy was a distressing event in the life of the mother and her children, and it was quite becoming on the part of the brother that he should keep the litigation in its different phases under his immediate observation and lend to it his aid and advice. The conclusion is inevitable that there is not proof from official relations that the appellant counseled the brother to do what he did in the matter of the default.

So the case comes to this: Is the brother guilty of contempt because he advised the cotenants to buy the land, lest, as he says, it be involved in the litigation? And it is to this that the question comes at last. Such statement by the appellant reveals his appreciation that his brother would not pay the alimony, that the property would be sequestrated, and a receiver of the income appointed, to that extent at least bringing in a stranger as a cotenant. He conceived that the alimony was placed far in excess of the unaided ability of the defendant to pay it from his income, and that it was in its larger part based on the inference that past advances from the mother to the defendant would be continued through willingness to aid or coercion to save him from punishment, and this court later justified his conception that the alimony was excessive by its decision, whereby the alimony was reduced from $350 to $150 per month. The purchase of the property by the cotenants delivered them from the threatened association with the litigation, and furnished the defendant with ample means to meet the payment of the alimony. The plaintiff's assertion in effect is that the defendant's interest in the land was so tethered to the erroneous decree that the brother and his cotenants could not honestly purchase it with a view of delivering themselves from the harassing association that menaced them, and

that if they did so the law, looking to the motive, would condemn it and the act as fraudulent, and the brother's advice and participation as contemptuous. Had the defendant placed the purchase money at the disposal of the plaintiff for the purposes of her judgment for alimony, unfounded in greater degree, there certainly could be no fault attaching to the sale. But it was not the brother's duty to seek the plaintiff for that purpose, or to allow the application of the money to the decree. The plaintiff's present attitude is that the whole interest unmortgaged should have been left undisturbed, while the cotenants awaited the appropriation of all of it for capitalization of the alimony.

The errancy of the son has in this litigation been related too much to the solicitude of the mother, as the letter of the plaintiff's attorneys to her, as well as the record in the action, illustrate; and this last attempt to punish the brother because he has been helpful to defendant in the litigation, but unwilling to confuse family property with possible appropriations of defendant's interest to meet his liabilities, imposes too great burden upon kinship and the right to defendant against uninvited association in ownership. The learned counsel for the plaintiff does not fail in the law invoked, but the application of it to the facts. The plaintiff had rights, but so had the brother, and he was not obliged to yield them to aid her. He is presumably a respectable attorney of the court, and his act, done openly in counseling his brothers and sister to buy this interest, does not merit the decision that he is a fraudulent grantee. This litigation has sufficiently occupied the courts, and while it is hoped that a sense of duty on the part of the defendant will hereafter secure to the plaintiff and her children what is their due, yet if there should be default, the penalty should attach to him who has earned it.

The order should be reversed, without costs, and the motion denied, without costs. All concur.